## CHAFEE & CO. v. RAINEY.

1. The concluding order of a Circuit decree was directly contrary to the whole tenor of the decree. Upon the matter being brought to the judge's attention by a letter from the attorney of the losing party, the judge wrote to the clerk of court, directing a change in the order, stating that the concluding sentence as written was an error. *Held*, that it was a mere clerical error, which the Circuit judge could correct on an *ex parte* application, and that the act of the clerk under the order of the court was the act of the court itself.

2. A judge may render a decree in a cause heard before him in one Circuit, after he has entered upon the duties of another term in another Circuit; and so, too, he may then direct the correction of mere clerical errors in a judgment rendered by him on a previous Circuit.

3. If, at the time of levy, a condition of things exist entitling defendant to homestead, he may properly claim it. Thus, where judgment was obtained against the head of a family, and he afterwards ceased to be such, but again, and before levy made, married a wife, he is entitled to his homestead exemption as against such judgment.

4. This case distinguished from *Pender* v. *Lancaster*, 14 *S. C.*, 25, and *Jones* v. *Miller*, 17 *S. C.*, 380, and *Pender* v. *Lancaster* explained and limited.

Before ALDRICH, J., Georgetown, March, 1883.

The opinion fully states the case.  The original decree of the Circuit judge was as follows, omitting its statement of facts :

Mr. Dozier, with great force and ingenuity, contended that the defendant Rainey is not entitled to the exemption, because his second wife having died in June, 1880, and his children not living with him, he was not the head of a family; that the lien of the judgment attached, and his subsequent marriage in June, 1881, did not divest that lien, and, therefore, the lot No. 55, in which he had lived with his previous wives and children, was subject to levy and sale.

After the adoption of the constitution of 1868, our Supreme Court, as it was then constituted, seemed inclined to give the most liberal construction to the article providing for the homestead exemption.  They treated it as a favored tenure for the support of the family of the insolvent debtor, whose reverses had reduced them from affluence to poverty, and doubtless this was the benevolent intention of the framers of the constitution.  Evidently it was intended to meet any final process, issued from any court, for any debt contracted before or after the adoption of the constitution.  But the decision in *Gunn* v. *Barry*, of the United States Supreme Court, suddenly arrested this inclination, and this beneficent purpose of the constitution was treated as against public policy and the binding obligation of contracts.  This was so obvious that the legislature found it necessary to pass several acts giving construction to the constitutional provision and enlarging the restrictions placed thereon by the court.

I am convinced, from a careful consideration of the debate on the adoption of this section, reported in the journal of the convention, that the benevolent idea of Mr. Jefferson was the controlling thought of those who had the framing of that instrument.  That distinguished statesman and philosopher, whose political sagacity was as far-reaching as his benevolence was wide, in the dawn of our independence thus eloquently writes : "When the war is over and our freedom won, the people must make a new declaration ; they must declare the rights of man, the individual, sacred above all craft of priesthood or government—they must, at one blow, put an end to all the trickeries of English law, which, garnered up in the charnels of ages, bind the heart and soul with

lies.    They must perpetuate republican truth by making the homestead of every man a holy thing, which no law can touch, no juggle wrest from his wife and children.    Until this is done, the revolution will have been fought in vain."

This idea of the sacredness and inviolability of the homestead was more readily adopted by the new states than by the old.    Experience had taught them that the debtor class was more frequently the victim than the creditor class, the latter too often seducing the former into expenditures that ruined his fortunes and deprived his wife and children of the shelter of the family roof-tree ; that capital is ever waging perpetual war against labor.    Hence the constitution of 1868 introduced this protection for the helpless and innocent family, and the legislature has since approved the benevolent purpose, so that I hold it to be the duty of the courts to perpetuate this truth :  "That the homestead of every man is a holy thing, which no law can touch, no juggle wrest from his wife and children."

Now, Rainey was entitled to his homestead in February, 1874, when Chafee & Co. obtained their judgment.    It was not assigned to him until January 19th, 1883, and it is contended that the lien of the judgment attached after the death of the second wife, in June, 1880, because, his children having married and moved away from the homestead, he was not the head of a family.    Is not this the very "juggle" and "trickery" that Mr. Jefferson speaks of ? How can it be maintained that the man is not the head of a family because his children have married and gone off ?    Filial relations cannot be thus dissolved.    The children of the daughter and the son are taught to regard the grandparents with as much affection, respect, and reverence as their own parents, and to look to the old homestead as the place where they have the right to go and be welcomed and protected.    Suppose the husband of Rainey's daughter dies, leaving her a desolate widow, with destitute children.    Is it the spirit and intention of the law that she, with her orphans, shall be turned from her father's house because a ruthless creditor has levied an execution after the death of her mother, and while she was absent from the home of her nativity ?    I cannot think so.

Section 1,995, page 579, of the General Statutes, provides for

the filing, approval, and recording of the return. "And upon such return being recorded in forty days after the proceedings have become final, the title to the homestead so set off and assigned shall be forever discharged from all debts of said debtor then existing or thereafter contracted." In this case the levy was made on December 6th, 1882; the homestead assigned to him January 19th, 1883. Why? Because, from February, 1874, the date of the Chafee judgment, he had a wife and children living with him, and the plaintiff in the execution making no levy, there was no necessity for him to claim his exemption. But after the death of the wife, and the marriage and removal of the children, although he had taken another wife, who was then living with him, the plaintiff claims that, in the interval between the death of his second wife and his marriage to his last wife, the lien of the execution vested, and the subsequent marriage cannot divest it.

*Pender* v. *Lancaster*, 14 *S. C.*, 25, is relied on to support this position. But that is a very different case. The property levied on there was a horse, and was advertised for sale by the sheriff. The defendant married the day before the sale. The court very properly say: You cannot defeat a vested lien by marrying a wife twenty-four hours before the sale. This would be using the law to practise a fraud. The credit extended to you was on the faith of that horse, and the law can afford you no aid. Here the credit was not extended to Rainey on the faith of his homestead, in lot No. 55, or on the probability of his wife dying and his children marrying and moving off, for the creditors were fully apprised that he was the head of a family. By section 1,998, page 580, "no waiver of the right of homestead, however solemn, made by the head of a family at any time prior to the assignment of the homestead, shall defeat the homestead provided for in this chapter." If the defendant, in execution, cannot defeat the homestead by the most solemn act, how can it be defeated by operation of law?

I think this disposes of the question, and the application for homestead is dismissed with costs.

*Mr. R. Dozier*, for appellant.

*Mr. LeGrand G. Walker*, contra.

March 22, 1884.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   These two cases, involving the same question, were heard and will be considered together.   The questions are: 1. Whether the respondent is entitled to claim a homestead as against the judgments of the appellants; 2. Whether the circuit judge had the power to correct a mistake in his decree after it was filed.

The facts out of which these questions arise are as follows: The judgment in favor of Chafee & Co. was recovered on February 11th, 1874, and that in favor of Johnson on June 24th, 1875. There is also "a judgment in favor of Lavinia Burridge for $97.24, dated June 24th, 1875, on record, but unrenewed." In all these judgments the causes of action arose since the adoption of the present constitution.   The respondent Rainey has been married three times, and resided, with his several wives, on the lot in which the homestead has been assigned to him, viz., with the first wife from April, 1862, to November, 1876, when she died; with his second wife from May, 1878, to June, 1880, when she died; and with his third wife, who is still living, from June, 1881, to the present time.   The respondent during all this time had children living, but not residing with him, being only temporary visitors to the homestead at various times.   He also had servants at the homestead continuously from the date of his first marriage.

Under executions issued in the above stated cases, the sheriff on December 6th, 1882, levied on two lots, Nos. 55 and 56, in the town of Georgetown, and on December 20th, 1882, the respondent required the sheriff to have his homestead set off to him. Appraisers were accordingly appointed, who on February 16th, 1883, made their return, assigning as a homestead to respondent lot No. 55, which they valued at $1,300, and certified that the same was not susceptible of a division.   In accordance with the statute, the surplus, $300, was paid to the sheriff, and the other lot, No. 56, was sold by the sheriff for $600, and this sum, together with the surplus above mentioned, was applied by the sheriff to the executions in the order of priority.   The judgment in favor of Chafee & Co. was satisfied, leaving a balance in the sheriff's hands, insufficient, however, to satisfy the other judgments.

The appellants duly filed exceptions to the claim of homestead: 1. Upon the ground that the judgments were a vested lien upon both of the said lots "while the respondent was a single man without a family, and before he became the head of a family, and his subsequent marriage cannot divest the already vested right of the creditor." 2. Because the property assigned as a homestead exceeded in value the amount exempt, as such, under the constitution and laws. The exceptions were argued before Judge Aldrich at March term, 1883, of the court for Georgetown, and on May 1st, 1883, he filed his decree, in which, after elaborately discussing the question raised by the first exception, and showing most unmistakably that, in his opinion, the exception was not well founded, but that respondent was entitled to his homestead exemption, he concluded his decree in these words: "I think this disposes of the question, and the application for homestead is dismissed with costs."

On May 12th, 1883, Judge Aldrich, on the application of defendant's attorney, and without notice to the adverse party, filed the following order, which, after stating the cases as above, and the venue, is in these words: "I have received a letter from Mr. Walker, attorney for Rainey, in which he informs me that, in my decree in this case, I close the same by saying: 'The application for homestead is dismissed with costs.' This is an error. I should have said: *The exceptions to the return are overruled with costs.* The clerk is directed to amend the original decree, and file this supplemental order with it as his authority for so doing."

The plaintiffs appeal upon the following grounds: 1. "That the judgments in the above cases became a vested lien on the realty in which a homestead is set up while the defendant was a single man without a family, and before he became the head of a family, and his subsequent marriage cannot divest the already vested right of the creditor. 2. Because his honor having filed his decree dismissing the application for homestead, had no right, on *ex parte* application, to reverse his own decree without notice to the opposite party, and certainly had no right to instruct the clerk of the court to do so."

We will consider the second ground of appeal first. It is perfectly clear that the concluding words of the decree of Judge

Aldrich, as originally written, not only did not express the judgment which he intended to announce, but expressed precisely the opposite of such intention. Indeed, strictly speaking, there was no "application for homestead" before him for consideration. The homestead had already been assigned in the mode prescribed by law, and the only question before him was whether the exceptions to such assignment, filed by the creditors, should be sustained or overruled. That was the question which he considered, and after arguing to show that such exceptions were not well founded, he concludes by saying, "I think this disposes of the question," and then adds the words which have given rise to the difficulty, and which were not responsive to the question he had been considering, viz., "And the application for homestead is dismissed with costs." It is quite manifest, therefore, that the addition of these words was a mere clerical error, which, in our opinion, he had full authority to correct. As is said in 2 *Dan. Ch. Pr.*, 1233, in speaking of rectifying decrees: "In cases, however, in which a clerical error has crept into the decree, or in which some ordinary direction has been omitted, the court will entertain applications to rectify it, even though it has been passed and entered. * * * It is, nevertheless, to be observed, that it is a principle of the court, that no alteration can be made in a decree on motion without a rehearing, except in a matter of clerical error or of form, or where the matter to be inserted is clearly consequential on the directions already given."

It is said, however, that even granting the power to make the correction, it could not be exercised upon a mere *ex parte* motion without notice to the adverse party. Where the error corrected is purely clerical, as in this case, we can conceive of no reason why notice should be given to the adverse party. It is a matter solely for the consideration of the judge who committed the error. And what light the adverse party, if notified, could throw upon the question, whether the error complained of is a clerical error, we do not readily perceive. Besides, the authorities are clear that no notice of a motion to correct a clerical error, or an error of form in a judgment, is necessary. *Giles* v. *Pratt*, 1 *Hill*, 239; *Ashmore* v. *Charles*, 14 *Rich.*, 63. Nor do we think that there is anything in the objection that the correction was made by the

clerk under the order of the judge, instead of being made by the judge with his own hand. The clerk is the officer of the court, and any mere ministerial act which he does by the order of the court is the act of the court itself.

Again, it is urged that Judge Aldrich, as judge of the second Circuit, after the adjournment of the court in Georgetown, the last court in the third Circuit, no longer had any jurisdiction in cases arising in that Circuit. The brief does not show the facts necessary to base this position upon, but assuming that we are bound to take judicial notice of such facts, we do not think that the position can be sustained. Surely it cannot be said that the judge of the second Circuit, when assigned under the statute to hold the courts of the third Circuit, loses jurisdiction of all causes within that Circuit so soon as the last court of such Circuit has been adjourned. If so, then it would be necessary for him to file all his judgments before adjourning the last court of such Circuit; which, in many cases, would be a practical impossibility, and hence cannot be a correct construction of the statute. Having, as he must have, jurisdiction to prepare and file his judgments after the adjournment of the last court, when necessary, he must also have the power to put such judgments in proper form by correcting any mere clerical errors that may have crept into them.

This brings us to the consideration of the first ground of appeal. There can be no doubt that when these judgments were recovered, and when the causes of action upon which they are based arose, Rainey, as the head of a family, was entitled to claim the homestead exemption. The question therefore is, Does the fact that, after these judgments were recovered, he became a widower and not the head of a family during the comparatively short periods between the death of his first wife and his marriage with his second, and between the death of his second wife and his marriage with his present wife, deprive him of the right of *now* claiming such exemptions when he *is* the head of a family? It will be observed that no attempt was made to enforce the executions issued on the judgments in these cases, during either of the periods when Rainey, by reason of the death of his first two wives, was not the head of a family, but that the levy was made on December 6th, 1882, sometime *after* he had again become the head of a

family; and the only question for us to decide is, whether he is *now*, under the present condition of things, entitled to the exemption of his homestead.

As we have held in *Elliott* v. *Mackorell*, 19 *S. C.*, 238, and *Ex parte Ray*, 20 *S. C.*, 246, the right of homestead guaranteed by the constitution is not an estate, but a mere right of exemption. It is nothing more than a prohibition against the use of the process of the courts for the collection of debts in certain cases, and when a certain condition of things is found to exist. Whether the homestead provision in the constitution divests the *lien* of a judgment, is not, in our judgment, a question pertinent to the present inquiry. It unquestionably forbids the *enforcement* of a judgment, except in the excepted cases provided for in the constitution, *by levy and sale* of the homestead of one who is the head of a family. When he became the head of a family, is not the question. The real question is, Does the condition of things exist under which the constitution forbids the use of the process of the courts in enforcing the collection of debts? If they do exist, then we are at a loss to perceive by what authority any officer or any court can refuse obedience to this plain mandate of the constitution.

These creditors knew when their debts were contracted and when their judgments were recovered that they could not enforce them against the homestead of their debtor while he was the head of a family, and they must be presumed to have extended credit to him with that understanding. And if they did not choose to enforce them while Rainey was not the head of a family, and while they had free use of the process of the court, they cannot *now* enforce their claims against the homestead of their debtor while he *is* the head of a family, and while the condition of things exist under which the constitution absolutely forbids the use of the process of the courts. We do not see how this view in any way interferes with any vested right of these creditors, and we are entirely satisfied that the respondent is entitled to claim his homestead exemption.

The case of *Pender* v. *Lancaster*, 14 *S. C.*, 25, is much relied on by the appellant, and while some of the remarks made by the former chief justice in that case do seem to support the view con-

tended for by the appellant, we do not think that the point de-
cided in that case, which alone is authority, will sustain his posi-
tion.   That was an action to recover damages from the sheriff, for
the sale of a horse, *which was levied on before the plaintiff became
the head of a family*, though he married before the sale took
place, and claimed that the horse was a work animal, and exempt
from levy and sale.   It did not appear that the debtor, in that
case, had even taken any steps to have any property set apart to
him as exempt under the homestead laws, in the mode prescribed
by statute, but simply brought the action for damages in making
the sale.   It is quite clear that the action could not be maintained.
The sheriff having made the levy before the debtor had become
the head of a family, as he had a perfect right to do, acquired a
title to the property levied on, and the debtor no longer had the
possession or the right to the possession thereof.   The sheriff's
title was absolute and perfect, and continued so until the property
was sold under the execution, or the execution was otherwise
satisfied.

So that, even if the debtor, in that case, after he became the
head of a family, had demanded that his property exempt from
levy and sale should be set off and assigned to him, the property
levied upon could not have been so assigned to him, as it was then
not only out of his possession, but he then had no right or title to
it; and in the event which occurred he never afterwards acquired
any such right.   As is said by Nott, J., in *McClintock* v. *Gra-
ham*, 3 *McCord*, 244, "when a sheriff levies on personal property,
it becomes his own for all legal purposes.   He can maintain an
action for it, even against the debtor himself, at any time before
the sale or satisfaction of the debt.   When the execution is satis-
fied, if otherwise than by the sale of the property, the right of the
debtor recurs, and the right of the sheriff ceases to exist against
*him*.   It still, however, remains against every other person."
While, therefore, we assent to the *decision* in the case of *Pender*
v. *Lancaster*, we do not indorse all of the reasoning employed by
the former chief justice in delivering the opinion.

So, too, we do not think that the analogy sought to be drawn
from the decision in *Jones* v. *Miller*, 17 *S. C.*, 380, in reference
to a claim of dower, holds good.   Dower is an estate, while home-

stead is not.  If the wife, by her marriage, acquires an inchoate estate of dower in lands, upon which an incumbrance or lien has been previously created, she, of course, must take such estate subject to such lien or incumbrance, as any purchaser would do. But homestead not being an estate, but simply the right of exemption, which the constitution declares shall exist whenever a certain condition of things is found, stands upon a very different footing.  The debtor, when he becomes the head of a family, does not thereby acquire any new estate, which would be subject to any prior incumbrance, but he simply places himself in a condition in which the constitution forbids the use of the process of the courts in selling for debt a certain portion of his property.

The judgment of this court is, that the judgment of the Circuit Court, as corrected by the order filed May 12th, 1883, be affirmed.